IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN G. CARVER #204-326          :
    Petitioner

v.                                 :   CIVIL ACTION NO. CCB-10-2925

WARDEN BOBBY SHEARIN, et al.       :
    Respondents

**MEMORANDUM**

On October 15, 2010,[1] the Clerk received self-represented petitioner Steven G. Carver's 28 U.S.C. § 2254 habeas corpus application attacking his 1989 Maryland judgment of conviction for first-degree murder and related offenses. ECF No. 1. Respondent filed an answer which addressed the timeliness of petitioner's application and requested that the petition be dismissed as untimely. ECF No. 10. Petitioner was advised of his opportunity to file a reply (ECF No. 11), and did so. ECF No. 12. Based on that reply, the court appointed petitioner counsel under the Criminal Justice Act.[2] Additional briefing and exhibits have been submitted by the parties (ECF Nos. 25, 27 and 30), and the case is ready for dispositive review, there being no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *see also* 28 U.S.C. § 2254(e)(2). For reasons set forth herein, the court shall dismiss the petition as time-barred and decline to issue a certificate of appealability.

Procedural History

On November 16, 1989, a jury sitting in the Circuit Court for Baltimore City found petitioner guilty of first-degree murder, use of a handgun in the commission of a crime of violence, and unlawfully wearing, carrying and transporting a handgun. ECF No. 10, Ex. 1. On

---

[1] The petition is dated October 1, 2010, and thus deemed filed on that date. *See Houston v. Lack*, 487 U.S. 266 (1988); *United States. v. Dorsey*, 988 F.Supp. 917, 919-20 (D. Md. 1998).

[2] Such appointment is permitted when in the interest of justice. *See* 18 U.S.C. § 3006A(a)(2)(B).

January 30, 1990, petitioner was sentenced to life imprisonment without the possibility of parole for murder and a twenty year consecutive sentence for use of a handgun. The conviction for carrying a handgun merged. *Id.*

Petitioner filed a timely appeal to the Court of Special Appeals of Maryland, raising six allegations of trial court error concerning:

(1) adoption of a protective order preventing disclosure of the names of witnesses against him;

(2) joining the co-defendants at trial;

(3) denying a motion to suppress photographic identifications;

(4) admitting the conversation between the alleged victim and Carver from the night before the murder;

(5) failing to give jury instructions regarding the use of a handgun in commission of a crime of violence; and

(6) improperly instructing the jury as to the burden of proof.

The appeal was denied in an unpublished opinion filed on January 13, 1992. ECF No. 1, p. 3; ECF No. 25, p. 2. Carver did not seek further review in the Court of Appeals of Maryland. Thus, Carver's judgment of conviction became final for direct appeal purposes on February 27, 1992.

On April 24, 1996, a one-year limitations period for seeking federal habeas corpus relief was enacted as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA").[3] Where, as here, a defendant's convictions became final before the enactment of AEDPA, the defendant was afforded a one-year grace period to seek habeas corpus relief in the United States district courts. *See Brown v. Angelone*, 150 F.3d 370, 375 (4th Cir. 1998); *see also* 28 U.S.C. § 2244(d).

---

[3] *See* Pub. L. No. 104-132, 110 Stat. 1214 (codified in scattered sections of Title 28 of the United States Code).

Accordingly, Carver's one-year limitations period began to run on April 24, 1996.

In January of 1996, Carver met with counsel from the Collateral Review Division of the State Office of the Public Defender to discuss whether he should seek post-conviction relief. After reviewing the trial transcripts, counsel informed Carver that she found no meritorious grounds for seeking relief. ECF No. 30, Ex. 1 at 1. On February 13, 1997, with 70 days remaining in his one-year limitations period,[4] Carver filed a self-represented petition for post-conviction relief in the Circuit Court for Baltimore City, *see* ECF No. 25, Ex. 1, p. 2, thus tolling the limitations period.[5] *See* 28 U.S.C. § 2244(d)(2). At the time of filing, Carver moved the Circuit Court to appoint a panel attorney to represent him at his post-conviction hearing, citing AEDPA and expressing dissatisfaction with the Office of the Public Defender. ECF No. 30, Ex. 1. A hearing on the petition, which was never amended by counsel for the Public Defender, was continued on several occasions. ECF No. 25, Ex. 1, p. 4. During this time, Carver's family initiated a payment plan and retained attorney Kenneth Ward to represent Carver at post-conviction. *Id.,* Ex. 2.

After entering his appearance and undertaking representation, Ward filed a motion to withdraw the uncounseled post-conviction petition originally filed by Carver. By order dated July 31, 2002, and filed August 5, 2002, the Circuit Court granted the motion to withdraw the pending post-conviction petition.[6] *Id.*, Ex. 25, p. 3; ECF No. 10, Ex. 1. On August 15, 2002,

---

[4] It appears that at the time he filed this petition, Carver was generally aware of the one-year limitations period imposed by the AEDPA. ECF No. 25, pp. 3-5.

[5] Carver's self-represented post-conviction petition, which contained more than twenty grounds for relief, is found at ECF No. 27, Ex. 1.

[6] Carver's counsel now argues that the language on the order, signed by Judge Martin P. Welch, did not withdraw the post-conviction petition. ECF No. 30, pp. 1-2. The order reads, in relevant part, " it is…ORDERED that Petitioner's Motion to Withdraw without Prejudice is hereby WITHDRAWN WITHOUT PREJUDICE." ECF No. 25, Ex. 9. Counsel argues that by its plain language, the order did not grant the withdrawal of Carver's post-conviction petition, but rather directed that the motion to withdraw filed by Ward itself be withdrawn. ECF No. 30

Carver wrote to Ward, stating in pertinent part:[7]

> [It] is also my understanding that there is a one year time limit that began ticking once you withdrew post conviction petition. Is that correct? At your earliest convenience could you inform me whether or not my understanding of these new laws is correct because I would like to preserve my right to file my post conviction and federal habeas corpus if need be. Any rules, statutes or case law that you could send me on this matter would be greatly appreciated.

ECF No. 25, Ex. 3 (letter of Aug. 15, 2002). In a letter to Ward dated January 23, 2003,[8] petitioner again inquired:

> [A]re you sure that the one year statute for filing my federal habeas corpus does not start until after I finish my post conviction? I know I preserved it by filing my post conviction petition in February of 1997, but I am unsure if the clock began ticking again after you withdrew my petition. Some guys in this institution said the time did start again after withdrawing my petition, but other guys said like you said, that the one year statute of limitations does not start until after I have exhausted my post conviction and all State remedies. I have been trying to find some case law on it, but I have been unsuccessful. I have been calling you hoping to talk to you more fully about that situation.

---

at 2. Counsel argues that because the order did not grant Ward's motion that the pro se petition be withdrawn, the petition remained pending before the Circuit Court from August 5, 2002, until at least November 25, 2008, when attorney Brown filed a counseled post-conviction petition. Under this construction, the instant petition is timely, as the only time periods that counted toward the one-year limitations period were 295 days from April 24, 1996 (when the limitations period began), until February 13, 1997, when Carver filed his pro se post-conviction petition, and 65 days from July 28, 2010, when the Court of Special Appeals issued its mandate, until October 1, 2010, when Carver filed his federal habeas petition.

Counsel's computation is correct, but the premise on which it is based is flawed. The Circuit Court did not accept the post-conviction petition submitted by Brown as a supplement to the pro se petition; instead, it was treated as a newly filed petition. Further, correspondence and dialogue between Carver and Ward (and later between Carver and Brown) demonstrates that all involved considered the pro se post-conviction petition to have been withdrawn effective August 5, 2002. In any event, neither Carver nor any of his attorneys requested that Judge Welch clarify or correct the August 5, 2002, order.

[7] At the time Ward withdrew the petition, 70 days remained in the one-year limitations period.

[8] Petitioner's current counsel infers that petitioner spoke to Ward via telephone on several occasions during the latter months of 2002 and was misadvised as to when the limitations clock would commence. ECF No. 25, p. 4. The January 23, 2003 correspondence supports an inference that such conversations did occur. Such inference is further supported by petitioner's January 12, 2003, letter to Ward which in part read "I have written you several letters without response, and when I call your office I do not get through." *Id.*, Ex. 4, p. 1.

4

*Id*., Ex. 4, pp. 1-2. In July 10, 2005, correspondence petitioner reminded Ward that "I have yet to receive the case law that you mentioned you would send me in regard to the one year time frame of the statute of limitations beginning after the post conviction procedure process." *Id*., Ex. 5, p. 1. In that same letter, petitioner complained:

> It has been three years that you have been hired to represent me. And over that time, it has been extremely difficult in communicating with you. You have yet to even send me a rough draft of a petition, yet you say we are waiting on a court date. That means at the moment I'm going in the courtroom "in the blind," solely relying upon what you have submitted.
>
> It has been several months, nearly a year, since the last time I or any of my family members talked to or heard from you. I am never able to catch you at your office when I call.

*Id.*

Ward never filed a post-conviction petition. In an opinion dated December 18, 2006, Ward was disbarred for incompetence, lack of diligence, and failure to communicate in a case involving another client. *See Attorney Grievance Commission of Maryland v. Kenneth Stanford Ward*, No. 59, Sept. Term, 2005, ECF No. 12, Ex. 7.[9]

In August of 2006, petitioner's family retained the law firm of Nathans & Biddle, LLP ("the firm") to represent petitioner. ECF No. 25, Ex. 7, Aug. 10, 2006. Then associate C. Justin Brown was the primary attorney assigned to represent petitioner. *Id.,* Ex. 8, p. 1. The first phase of post-conviction analysis involved review of petitioner's motions, trial and sentencing transcripts. *Id*. Ward ignored several letters and calls from counsel in August and September of 2006 requesting these materials. *Id.,* Ex. 9 and 10. The firm finally obtained transcripts from petitioner's co-defendant, Joe Ray Hodge. *Id*., Ex. 10. Petitioner's father paid the firm $10,000

---

[9] On July 23, 2008, the $3,000 paid in installments to Ward by petitioner and his family was returned through the Client Protection Fund of the Maryland Bar. ECF No. 25, Ex. 2, pp. 1-3 and Ex. 6, check dated July 15, 2008.

for transcript review. *Id*., Ex. 8, p. 1.

Initial review of petitioner's case was completed by December 27, 2006. *Id.* A week prior to completion of the initial review, the firm quoted petitioner a fee of $25,000 for the second phase of post-conviction representation involving investigation, legal research, and the preparation, filing and litigation of a petition for post-conviction relief. *Id.,* Ex. 8, p. 2; Ex. 11 at 1, letter of Dec. 21, 2006. Over the ensuing 18 months, petitioner's family was able to pay an additional $3,150 toward the $25,000 fee. *Id.,* Ex. 8 at 2.

In May of 2008 Brown, recognizing that petitioner and his family lacked the financial means to pay the fee for preparation and filing of the petition, spoke with supervisor Nathans and other firm members. Based on the belief that petitioner had a good case, firm members agreed to proceed with the petition without payment of the fee. *Id.* By letter dated June 3, 2008, Brown notified petitioner of the firm's decision, and indicated that the firm would need more time than usual to file the post-conviction petition, as he would work on the case in between other legal matters. *Id.,* Ex. 8, p. 2; Ex. 12.

On November 25, 2008, the firm filed a post-conviction petition in the Circuit Court for Baltimore City, raising the following claims:

> 1. The State violated *Brady v. Maryland*[10] by failing to disclose evidence that there was another man who was trying to kill the victim;
>
> 2. Carver was convicted based on the false testimony of firearms expert Joseph Kopera;[11] and

---

[10] *See Brady v. Maryland,* 373 U.S. 83 (1963).

[11] Kopera, who for many years testified in Maryland courts as a firearms expert, committed suicide after it was discovered that he had lied about certifications listed in his resume. The Maryland courts have held that Kopera's perjured trial testimony that he graduated with honors from the Illinois School of Technology and had received further certification from two organizations that did not, at that time, offer such programs, was not material and did not, without more, warrant new trials. *See, e.g., Stevenson v State,* 299 Md. 297, 304 (1984); *Argyrou v. State*, 349 Md. 587 (1998); *see also* ECF No. 10, Ex. 7, "Police Expert Lied About Credentials," *Baltimore Sun,* March 9, 2007.

3. Trial counsel provided ineffective assistance for failing to
   a. obtain an expert to challenge the State's ballistics evidence;
   b. object to a a flawed reasonable doubt instruction;
   c. object to the flawed presumption of truthfulness instruction; and
   d. investigate critical witnesses.

ECF No. 10, Ex. 2.

A hearing was held on September 9, 2009, and relief denied by the Honorable Gail E. Rasin in a Memorandum and Order dated January 6, 2010. *Id.*, Ex. 1, pp. 1-4. A timely application for leave to appeal[12] (*id.,* Ex. 1, p. 4) was denied by the Court of Special Appeals of Maryland in an unreported opinion issued June 28, 2010. *See Steven Carter v. State,* No. 2879, Sept. Term 2009; ECF No. 25, Ex. 1, p. 4. The mandate issued on July 28, 2010.[13] *Id.*

On August 12, 2010, Brown wrote petitioner, suggesting that petitioner seek federal habeas corpus relief raising the claims concerning the misconduct of firearms examiner Joseph Kopera and the newly discovered *Brady* material. Brown advised petitioner that although he had missed the deadline for filing a federal habeas petition, "you can argue that the filing deadline should not apply because you did not learn of the facts giving rise to [these claims] until

---

[12] The application for leave to appeal was filed pro se by petitioner; by letter dated June 3, 2008, Brown previously had informed petitioner that the firm's representation would extend only through the post-conviction hearing, and that the firm would not represent him in an application for leave to appeal, in an appeal, in a new trial, or otherwise. ECF No. 25, Ex.12.

[13] Judge Rasin's January 6, 2010 order contained a clerical error within the body of the order referencing "Phillip Carter" as the petitioner. On October 18, 2010, Judge Rasin issued an amended order stating that "the Petition for Post Conviction Relief filed by the Petitioner, Steven Carver, is hereby DENIED for the reasons noted in the Court's accompanying Memorandum on this date." ECF No. 25, Ex. 14. Petitioner's counsel suggests that the date of the amended order, October 18, 2010, should be considered the date on which post-conviction proceedings became final. ECF No. 25 at 9, n. 3. This argument fails: notwithstanding the erroneous caption, petitioner clearly accepted the January 6, 2010 opinion and order as determinative of his petition for post-conviction relief, and sought leave to appeal the decision from the intermediate appellate court. The undersigned notes that if the October 18, 2010, date were accepted as the final date for completion of post-conviction remedies, petitioner's failure to seek leave to appeal the denial of relief on that date would bar consideration of the grounds presented here pursuant to the procedural default doctrine.

recently."[14] ECF No. 25, Ex. 15. On October 1, 2010, petitioner signed his federal petition for writ of habeas corpus, which was received by the Clerk on October 15, 2010.[15]

Standard of Review

Title 28 U.S. C. § 2244(d)[16] provides a one-year statute of limitations in non-capital cases for those convicted in state court. This one-year period is, however, tolled while properly filed post-conviction proceedings are pending and may otherwise be equitably tolled. *See* 28 U.S.C.

---

[14] Brown does not recall discussing the one-year deadline with petitioner during the time the firm actively represented petitioner. He indicates that had he been asked, he would likely have informed petitioner that it was too late to seek habeas relief in federal court. ECF No. 25, Ex. 8, pp. 2-3. Petitioner does not dispute Brown's recollection.

[15] The federal habeas corpus petition reiterates post-conviction grounds 1, 2, 3(b) and 3(c), noted above.

[16] This section provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

§ 2244(d)(2). *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000); *Gray v. Waters*, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

In *Holland v. Florida,* __ U.S. __, 130 S.Ct. 2549 (2010), the Supreme Court held that equitable tolling applies to the statute of limitations for post-conviction petitions filed under § 2254.[17] *Id*. at 2554. The Court stated it "previously made clear that a non-jurisdictional federal statute of limitations is normally subject to a 'rebuttable presumption' in *favor* 'of equitable tolling,'" *id.*at 2560, citing *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 95-96 (1990); *see also Young v. United States*, 535 U.S. 43, 49 (2002). Examining AEDPA, the Court found the presumption's strength "reinforced by the fact that 'equitable principles' have traditionally 'governed' the substantive law of habeas corpus…" *Holland,* 130 S.Ct. at 2560, citing *Munaf v. Geren,* 553 U.S. 674, 693 (2008). The Court rejected the Eleventh Circuit's standard that even "grossly negligent" conduct by a petitioner's attorney cannot warrant equitable tolling, absent "proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part." *Holland,* 130 S.Ct. at 2563. Specifically, the Court found that in order to be entitled to equitable tolling, the movant must show (1) that he has diligently pursued his rights and (2) that some extraordinary circumstance prevented the timely filing. *Id*. at 2562. The Court found that

---

[17] In *Holland*, the petitioner was convicted of first-degree murder and sentenced to death in Florida state court. Holland's conviction was final on October 1, 2001; 37 days later, on November 7, 2001, the state of Florida appointed an attorney to represent Holland in all state and federal post-conviction proceedings. *Holland*, 130 S. Ct. at 2555. Appointed counsel filed a state post-conviction petition on Holland's behalf 316 days after his appointment and 12 days before the federal habeas deadline expired. *Id*. The state post-conviction petition remained pending for three years until mid-May 2003, when the state court denied relief. Appointed counsel appealed the denial to the Florida Supreme Court and, approximately two years later in February 2005, oral argument was heard in the case. *Id*. Between April 2003 and January 2006, court-appointed counsel communicated with Holland only three times by letter. *Id*. Holland sought counsel's removal from the case on two occasions; both requests were denied because Holland was prohibited from filing pro se pleadings in a case where counsel was appointed. When the Florida Supreme Court affirmed the lower court's decision denying Holland relief in November 2005 and issued the mandate on December 1, 2005, the filing deadline for his federal habeas petition began to run again and expired on December 13, 2005. *Id*. at 2556. Holland's court-appointed counsel did not advise Holland of the Florida Supreme Court's decision, nor did he prepare a federal habeas petition on Holland's behalf. *Id*. Rather, Holland learned on his own, nine days after the expiration of the federal habeas filing deadline, that his appeal was denied and he prepared his own federal habeas petition to file. *Id.*

"at least sometimes, professional misconduct that fails to meet the Eleventh Circuit's standard could nonetheless amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." *Holland*, 130 S.Ct. at 2563. While a "'garden variety claim' of attorney negligence" would not justify equitable tolling, the facts in *Holland* "present far more serious instances of attorney misconduct," 130 S.Ct. at 2564, where "despite Holland's many letters that repeatedly emphasized the importance of" timely filing a habeas petition, counsel failed to do so, and did not perform legal research in order to determine the proper deadline for filing a habeas petition, "despite Holland's letters that went so far as to identify the applicable legal rules." *Id.* Additionally, Holland's counsel failed to communicate with him "over a period of years, despite various pleas from Holland that…counsel respond to his letters." *Id.* The Court found that these failures "violated fundamental canons of professional responsibility, which require attorneys to perform competent legal work, to communicate with their clients, to implement clients' reasonable requests, to keep their clients informed of key developments in their cases, and never to abandon a client." *Id.* As a result of counsel's abandonment, Holland "thereby lost what was likely his single opportunity for federal habeas review of the lawfulness of his imprisonment and of his death sentence." *Id*. at 2565.

Analysis

The limitations period for federal habeas petitions filed by state prisoners is not jurisdictional and does not set forth an inflexible rule requiring dismissal whenever the one-year clock has run. *Holland*, 130 S.Ct. at 2560, citing *Day v. McDonough,* 547 U.S. 198, 208 (2006). Whether the limitations period should be subject to equitable tolling, however, hinges on the facts and circumstances of each particular case. *See Harris v. Hutchinson*, 209 F.3d at 329-30.

Here, petitioner's one-year limitations period began to run on April 24, 1996, and was

tolled on February 13, 1997, with 70 days remaining, when petitioner filed a self-represented petition for post-conviction review. The remaining time began to run again on August 5, 2002, when the Circuit Court granted a motion to withdraw the post-conviction petition filed by retained counsel Kenneth Ward, and expired on October 14, 2002.

It is uncontroverted that petitioner was generally aware of the limitations period. Presumably, he was informed of the deadline in January of 1996, when he met with counsel from Collateral Review to discuss post-conviction review, and certainly by the time he filed his self-represented post-conviction petition and moved the Circuit Court to appoint a panel attorney to represent him pursuant to provisions of AEDPA. At the latest, he demonstrates general awareness of a limitations period in August of 2002, in correspondence to then-counsel Ward expressing concern that Ward's withdrawal of the pro se petition caused the clock to begin "ticking again." *See* ECF No. 25, Ex. 4, p. 1. At this juncture, petitioner was between a rock and a hard place: having expressed to the Circuit Court his dissatisfaction with appointed counsel who had informed him that his grounds for post-conviction relief lacked merit, leaving him to challenge his conviction on his own, he and his family then expended their limited resources to retain private counsel who (1) acted against his interests in withdrawing the "placemarker" post-conviction petition that served to toll the limitations period, (2) refused his requests to perform basic legal research to ascertain when the limitations period would expire; (3) failed to maintain even minimal contact with him or his family; and (4) made no apparent attempt to research, prepare and file a post-conviction petition on his client's behalf prior to his disbarment in 2006.

Unlike *Holland,* this is not a capital case. Nonetheless, Carver is serving life without the possibility of parole. In retaining Ward, petitioner committed his limited financial resources hoping to overturn his conviction through the state post-conviction process and, if unsuccessful,

11

by seeking federal habeas corpus review. Petitioner was abandoned by counsel, who violated the fundamental canons of professional responsibility by his egregious behavior. Further, counsel was grossly negligent in withdrawing the pending post-conviction petition and taking no action to stop the expiration of the limitations period. Equitable tolling is warranted for the period from August 5, 2002 (when Ward withdrew the pending post-conviction petition filed by his client) until August 10, 2006 (when petitioner retained the law firm of Nathans & Biddle, LLP to represent him).

This finding, however, does not resolve the timeliness issue. Neither petitioner nor Brown remembers any discussion concerning the deadline for filing a habeas corpus petition under 28 U.S.C. § 2254, or whether any steps could be taken in August of 2006 to attempt to preserve federal habeas corpus review.[18] Brown indicates had he been asked, he would have advised petitioner that the limitations period had passed. ECF No. 25, Ex. 8, p. 3. Instead, after more than two years of review, investigation and research, the firm filed a post-conviction petition in the Circuit Court for Baltimore City on November 25, 2008. The post-conviction process concluded on June 28, 2010, when the Court of Special Appeals of Maryland denied petitioner's pro se application for leave to appeal. Petitioner did not immediately seek federal habeas corpus relief, and did not inquire about the possibility of doing so from Brown or from this court. He appears to have abandoned such pursuit until Brown wrote him on August 12, 2010, citing 28 U.S.C. § 2244(d)(1) to suggest that his claim concerning false testimony by firearms expert Kopera and his *Brady* claim might not be time-barred because they were recently discovered.[19]

---

[18] Indeed, the firm made clear that its representation, undertaken in part on a pro bono basis, extended only through the post-conviction hearing. ECF No. 25, Ex. 12, June 3, 2008 letter from Brown to petitioner.

[19] Petitioner indicates the claim concerning allegedly false testimony from firearms expert Kopera was discovered on

Brown's suggestion is unavailing. The one-year limitations period runs from the latest of "the date on which the factual predicate of the claims or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Assuming that the Kopera issue was discovered on March 1, 2007, and the *Brady* issue on September 6, 2007, the actual post-conviction petition was not filed until November 25, 2008, more than one year later. Nothing in the record remotely suggests that the firm's actions were anything but diligent; indeed, the firm did not "abandon" petitioner even when he was unable to pay the full retainer for developing and presenting his post-conviction petition. Furthermore, the firm made clear that its sole obligation to petitioner did not go beyond investigating and preparing the post-conviction petition and representing him at the post-conviction hearing. Petitioner did not discuss § 2254 habeas corpus relief with the firm and, prior to retaining Nathans & Biddle, appears to have abandoned any intention to pursue a federal habeas corpus claim. While his action may have been based on misunderstanding of the law, it provides no basis for equitable tolling. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Accordingly, for these reasons, the court shall dismiss the petition as time-barred.

Under Rule 11(a) of the *Rules Governing Proceedings under Section 2254* "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant…If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." In *Slack v. McDaniel*, 529 U.S. 473 (2000), the Supreme Court held that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA [certificate of appealability] should issue when the prisoner shows, at least, that ... jurists of

---

March 1, 2007, and his *Brady* claim was based on information obtained on September 6, 2007. ECF No. 12, Ex. 1, p. 3.

reason would find it debatable whether the district court was correct in its procedural ruling." *Slack,* 529 U.S. at 484. Petitioner has not satisfied this standard, and the court declines to issue a certificate of appealability. A separate order follows.

<u>May 16, 2013</u>                                                              <u>/s/</u>
    Date                                                                        Catherine C. Blake
                                                                                United States District Judge